**In re Ferne S. PETTINGILL, Debtor.**

**No. 4:07–bk–16269.**

United States Bankruptcy Court,
E.D. Arkansas,
Western Division.

April 9, 2009.

John Alexander Flynn, Flynn Law Firm, Cabot, AR, for Debtor.

---

### ORDER

JAMES G. MIXON, Bankruptcy Judge.

On November 9, 2007, Ferne Pettingill (Debtor) filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code. On September 7, 2008, the Debtor filed objections to claims filed by American Express Bank, FSB and American Express Centurion Bank (collectively referred to as American Express). The parties dispute whether the claims, based on credit card debt, are ruled by a three or a five-year statute of limitations. A hearing was held on December 29, 2008, and the matter was taken under advisement.

The proceeding before the Court is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(B), and the Court may enter a final judgment in this case.

## I. FACTS

On November 28, 2007, American Express filed Claim 1 as a general unsecured claim in the amount of $17,187.54. American Express amended Claim 1 on September 18, 2008, to update the claimant's address and then again on November 19, 2008, to add some supporting documentation. The last charge made to this account was dated June 24, 2004.

On April 3, 2008, American Express filed Claim 11 as a general unsecured claim in the amount of $9,396.57. On September 18, 2008, American Express amended its claim to update the claimant's address and then again on November 19, 2008, to add additional supporting documentation. The last payment applied to the Debtor's account was made on July 7, 2004.

On April 3, 2008, American Express filed Claim 12 as a general unsecured claim in the amount of $7,012.75. On September 18, 2008, American Express amended its claim to update the claimant's address and then again on November 19, 2008, to add additional supporting documentation. The last payment applied to this account was made on July 10, 2004.

No evidence was introduced as to when the first missed payment occurred with respect to any of the three accounts. The Debtor initially listed all three claims as undisputed on her Schedule F on November 9, 2007. On October 28, 2008, the Debtor amended his Schedule F to denote these three claims at issue as disputed.

On September 7, 2008, the Debtor filed objections to claims 1, 11 and 12.[1] The parties submitted written stipulations of fact. In the stipulations, the Debtor admits she used the credit cards to make charges and signed the receipts from merchants for purchases made on each of the three accounts. She stipulated that she does not recall receiving the "Agreement Among Business Credit Cardmember, Company and American Express Centurion Bank"; the "Agreement Among Business Capital Line Cardmember, Company and American Express Centurio Bank"; or the "Agreement Between Optima Platinum Card Member and American Express Centurion Bank." However, she also stipulated

---

1. The Debtor objected to other claims; however, they are not at issue here and it is unnecessary to discuss them.

that she cannot specifically deny having received the agreements.

■ American Express submitted an affidavit by Louise Turner an employee who has knowledge of American Express' record keeping policies and procedures; however, this affidavit cannot be considered because it was attached to a brief and was not made a part of the record. Stipulated Joint Exhibit 2 contains a copy of each of the credit card agreements.[2] Each agreement contains the following language:

This document and the accompanying supplement(s) constitute your Agreement. Please read and keep this Agreement. Abide by its terms. When you keep, sign or use ... [the credit card issued] ... you agree to the terms of this Agreement.

## II. ARGUMENT

The Debtor argues that the last charge or payment made by the Debtor on each account was made beyond the three-year statute of limitations applicable to unwritten open accounts governed by Arkansas Code Annotated § 16–56–105 and the claims should be disallowed.

American Express argues the claims should be allowed because the five-year statute of limitations period applicable to written contracts pursuant to Arkansas Code Annotated § 16–56–111 applies and the last payments were made within the five-year period.

## III. DISCUSSION

■ ■ A properly filed proof of claim constitutes prima facie evidence of the validity and amount of the claim. Bankruptcy Rule 3001(f) and *Dove–Nation v. eCast Settlement Corp. (In re Dove–Nation)*, 318 B.R. 147, 152 (8th Cir. BAP 2004). The objecting party then assumes the burden of producing evidence rebutting the claim or else the claimant prevails. *McGee v. O'Connor (In re O'Connor)*, 153 F.3d 258, 260 (5th Cir.1998); *In re Allegheny Intern., Snyder*, 954 F.2d 167, 173 (3rd Cir. 1992); *In re Circle J Dairy, Inc.*, 92 B.R. 832, 833 (1988). The defense of statute of limitations is an affirmative defense and the burden of proof lies with the party who asserts it. *Jessie v. Potter*, 516 F.3d 709, 713 (8th Cir.2008).

■ An open account is a type of contractual obligation. *Bloch v. Fedak*, 210 Kan. 63, 63, 499 P.2d 1052, 1053 (1972). In Arkansas the term " 'open account' means an account based upon running or concurrent dealings between the parties, which has not been closed, settled, or stated, and in which the inclusion of further dealings between the parties is contemplated." *Northwest Arkansas Recovery, Inc. v. Davis*, 89 Ark.App. 62, 69, 200 S.W.3d 481, 486 (2004)(citing *Plunkett–Jarrell Grocery Co. v. Terry*, 222 Ark. 784, 263 S.W.2d 229 (1953)).

■ "The three-year statute of limitations in Arkansas Code Annotated § 16–56–105(1)(1987) applies to actions on open accounts."[3] *Northwest Arkansas Recovery, Inc. v. Davis*, 89 Ark.App. 62, 69, 200

---

**2.** The agreements provide that, "all questions about [the] legality, enforceability and interpretation, are governed by the laws of the State of Utah." No party argues that Utah law applies. Furthermore, Arkansas Rule of Civil Procedure 44.1 was not complied with, which requires a party who intends to raise an issue concerning the law of a jurisdiction outside Arkansas shall give notice in the pleadings or other reasonable written notice. The Court will therefore analyze the issue according to Arkansas law in as much as the parties appear to have waived this provision.

**3.** Technical changes were made to Arkansas Code Annotated § 16–56–105 in 2006 to conform with the official Arkansas Code of 1987.

S.W.3d 481, 486 (2004)(citing *Taylor v. Slayton,* 231 Ark. 464, 330 S.W.2d 280 (1960)). Arkansas Code Annotated § 16–56–105(1) states that all actions shall be commenced within three years on "[a]ll actions founded upon any contract . . . not in writing." Arkansas Code Annotated § 16–56–111 sets a limitation of five years on actions to enforce written obligations.[4]

■ The Debtor's use of the card represents an intent to perform a unilateral contract by repaying the amount charged. *Sears, Roebuck & Co. v. McVicker (In re McVicker),* 234 B.R. 732, 736 (Bankr.E.D.Ark.1999)(citing *Anastas v. American Savs. Bank (In re Anastas),* 94 F.3d 1280, 1285 (9th Cir.1996)). "The traditional distinction between a unilateral contract and a bilateral contract is that, in the former, the offer or promise of one party does not become binding or enforceable until there is performance by the other party, whereas, in the latter, it is not performance which makes the contract binding, but rather the giving of a promise by one party for the promise of another party." *Scholtes v. Signal Delivery Service, Inc.,* 548 F.Supp. 487, 491 (W.D.Ark. 1982). In Arkansas, an offer may be accepted by spoken words or conduct. *Van Dyke v. Glover,* 326 Ark. 736, 742, 934 S.W.2d 204, 208 (1996) (citations omitted).

■ The credit cards were issued to the Debtor to be accepted by her in accordance with the terms and conditions set forth by the card member agreements or to be rejected by the Debtor's non-use of the credit cards. The issuance of the card was an offer and the contract became binding when the Debtor retained the card and made use of it and thereby agreed to the terms of the written agreement. See *Citibank South Dakota N.A. v. Santoro,* 210 Or.App. 344, 349, 150 P.3d 429, 432 (2006).

■ The Debtor's argument that the contract is not written is contrary to the evidence; in fact, the Debtor stipulated to the admissibility of the written contract. (Stipulated Joint Ex. 1.) The agreement between the Debtor and American Express was pursuant to a written agreement; therefore, the applicable statute of limitations is for an action on a written obligation and is for five years.

■ The question now arises, when does the cause of action accrue for purposes of Arkansas Code Annotated § 16–56–111. An action for breach of contract "accrues the moment the right to commence an action comes into existence, and the statute of limitations commences to run from that time." *Highland Industrial Park, Inc. v. BEI Defense Systems Company,* 357 F.3d 794, 798 (8th Cir.2004). The agreements each state that, "[w]e may consider your Account to be in default at any time if you fail to pay us any amount when it is due, or if you breach any other promise or obligation under this agreement."

The Court can only speculate as to when the statute started to run; however, the parties orally stipulated that the statute started running more than three years but less than five prior to filing the bankruptcy petition.

## IV. CONCLUSION

For the above stated reasons, the five-year statute of limitations applies. The Debtor's objections are overruled and American Express' claims are allowed.

IT IS SO ORDERED.

---

4. Arkansas Code Annotated § 16–56–111 provides that, "[a]ctions to enforce written obligations, duties, or rights, except those to

which § 4–4–111 is applicable, shall be commenced within five (5) years after the cause of action shall accrue."