IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

| | | |
|---|---|---|
| JOHN MOORE, TRUSTEE OF THE JOHN & BARBARA MOORE FAMILY REVOCABLE TRUST, | ) ) ) ) | |
| Plaintiff, | ) ) | TC-MD 210339N |
| v. | ) ) | |
| JACKSON COUNTY ASSESSOR, | ) ) | |
| Defendant, | ) ) | |
| DEPARTMENT OF REVENUE, State of Oregon, | ) ) ) | |
| Defendant-Intervenor. | ) | **DECISION** |

Plaintiff appeals the value of property identified as Account 10890676 (subject property) for the 2020-21 tax year. Plaintiff requests a 2020-21 real market value (RMV) of $495,000 based on his purchase price, which Defendant Jackson County Assessor (the county) has now agreed to. (*See* Or Gtg Ptf's Mot to Am Compl, Set Br Sched, Jul 25, 2022.) The effect of that RMV reduction is to reduce the subject property's 2020-21 assessed value (AV) to $495,000. (*Id.*) Plaintiff further requests that the subject property's 2020-21 maximum assessed value (MAV) and AV be reduced to $428,175. (*See* Ptf's First Am Compl at 7.) Plaintiff makes various state and federal constitutional arguments and policy arguments in support of his requested relief. (*See generally* Ptf's First Am Compl.) Plaintiff also seeks declaratory relief. (*See id.* at 18.)

After filing his original Complaint, Plaintiff moved for summary judgment and the court denied Plaintiff's motion by Order entered June 7, 2022. That Order is incorporated herein by reference. With leave of the court, Plaintiff filed an Amended Complaint. Defendant-Intervenor

(the department) filed a Motion to Dismiss (Motion) in response to Plaintiff's Amended Complaint and related briefing. This matter is now ready for the court's determination on the department's Motion to Dismiss Plaintiff's Amended Complaint.

To more fully explain the unusual posture of this case, the court begins by describing Plaintiff's first Motion for Summary Judgment and the court's Order denying it. The court then reviews Plaintiff's Amended Complaint, the department's Motion, and related briefing. Finally, the court considers Plaintiff's motion to file a second amended complaint.

## I. PROCEDURAL HISTORY, RELEVANT FACTS

The court made findings of fact in the Order entered June 7, 2022, and those findings are incorporated herein. To briefly restate key facts: the subject property was built in 1998 with exception value added in the 1999-00 and 2000-01 tax years based on the changed property ratio (CPR) for each year. Plaintiff purchased it for $495,000 in February 2020. Historically, the subject property's AV has been based on its RMV for 10 years, including the 2020-21 tax year at issue, and based on its MAV for 14 years. Properties within the same neighborhood as the subject property have higher RMVs yet lower property tax burdens than the subject property.

Plaintiff first moved for summary judgment arguing that the subject property's MAV violated Article I, section 20, of the Oregon Constitution and section 1 of the Fourteenth Amendment to the United States Constitution (equal protection clause). (Or Deny Ptf's Mot Summ J at 5.) Plaintiff requested that the subject property's MAV be reduced to achieve equal treatment with other similar properties and that his RMV be reduced to $495,000 based on its sale price. (*Id*. at 5, 7.) Plaintiff's briefing in support of his Motion for Summary Judgment made clear that he was *not then* arguing that Measure 50 was unconstitutional, but rather that the subject property had been "denied the benefits of Measure 50 because of the arbitrary conduct of

[the county]." (Ptf's Mot Summ J at 7.) The court denied Plaintiff's MAV claim because his request to adjust the subject property's MAV relative to his neighbors was squarely addressed and rejected by *Theda v. Department of Revenue*, 20 OTR 237 (2010).[1] (Or Deny Ptf's Mot Summ J at 6-7.) The court denied Plaintiff's RMV claim because RMV is a question of fact inappropriate for summary judgment. (*Id.* at 10.)

Plaintiff next moved to file a file an amended complaint (Plaintiff's First Amended Complaint). The court granted Plaintiff's motion, permitting him to add a claim challenging the subject property's 2020-21 MAV as violating Article I, section 20, of the Oregon Constitution. (Or Gtg Ptf's Mot to Am Compl, Set Br Sched, July 25, 2022.) Plaintiff's First Amended Complaint appears to make three essential claims:[2] (1) a demand for a reduction of the subject property's RMV to his purchase price of $495,000; (2) a reduction of the MAV and AV to $428,175; and (3) declaratory relief to the effect that "[t]he statutes authorizing the creation of unequal MAVs and AVs are arbitrary and unnecessary and are unconstitutional[, that] [ORS] 308.153 and ORS 308[.]146 must be declared void[, and] [t]he repeal of Article IX, section 1[,] and Article I, section 32[,] must be declared void." (Ptf's First Am Compl at 16-21.) In its Answer to Amended Complaint, the county agreed to an RMV of $495,000 but disagreed with Plaintiff's other claims and reasoning. (Ans to First Am Compl at 1.) The court set a briefing schedule on Plaintiff's second motion for summary judgment.

---

[1] *Theda* applied the holding of *Nordlinger v. Hahn*, 505 US 1, 112 S Ct 2326, 120 L Ed 2d 1 (1992) to Measure 50, concluding that Measure 50 did not violate the equal protection clause. (Or Deny Ptf's Mot Summ J at 6.)

[2] Plaintiff's First Amended Complaint is 43 pages. Some pages appear to be the motion, but also make claims (Ptf's First Am Compl at 1-4); some pages appear to be from his original Complaint, with items identified for deletion (*id.* at 8-15); six pages of narrative are labeled "amendments of complaint" (*id.* at 16-21); and the balance of the pages are Exhibits 6-9, of which only Exhibit 6 (Measure 50 ballot text) is new in this case. The court attempts to articulate and respond to Plaintiff's claims and arguments, but the ultimate burden lies with Plaintiff to present evidence in support of his requested relief. *See* ORS 305.427.

In the course of briefing Plaintiff's second motion for summary judgment, Plaintiff filed a document titled "Service of Proceeding on Oregon Attorney General ORS 28.110," indicating Plaintiff had served the Attorney General with the pleadings in the case. In response, the department filed an Answer in Intervention stating two affirmative defenses.[3] The court held a case management conference during which the court granted the department's request to suspend the briefing schedule on Plaintiff's second motion for summary judgment to allow the department to file a motion to dismiss. The court set a new briefing schedule on the department's motion to dismiss. In lieu of the response brief permitted by the court, Plaintiff responded to the department's motion to dismiss with a motion to file a second amended complaint (Plaintiff's Second Motion to Amend). In its reply, the department opposed Plaintiff's Second Motion to Amend and requested the court deny the same due to prejudice upon defendants and due to the futility of the proposed amendments. (*See generally* Inv's Resp to Ptf's Mot to File Sec Am Compl.) Plaintiff subsequently filed three successive documents of additional briefing outside of the established schedule.[4]

## II. THE PARTIES' POSITIONS

As noted above, Plaintiff's amended complaint seeks reductions in the subject property's 2020-21 RMV, MAV, and AV, and various forms of declaratory relief. In response, the county agreed to Plaintiff's requested RMV reduction. Thus, Plaintiff's remaining claims pertain the subject property's MAV and AV, and requests for declaratory relief. Plaintiff makes several

---

[3] ORS 306.115 states the department's statutory interest in the supervision of the property tax system for the State of Oregon. The department has statutory authority to intervene in any appeal before the tax court as a matter of right pursuant to ORS 305.560(4)(a).

[4] The documents Plaintiff filed on April 19, 2023, April 26, 2023, and November 1, 2023, were all beyond the briefing schedule established by the court, were filed without leave of the court, and cited no authority for their allowance. Therefore, their contents will not be considered.

arguments in support of those claims. First, Measure 50 created "an aggrieved class of taxpayers by creating a privileged class[,]" which Plaintiff defines as "all properties in the county with an initial MAV less than 86.5 [percent of] (the 1997 homes)." (Ptf's First Am Compl at 1, 16-17.) This argument appears to challenge the CPR method of calculating MAV for new property and proposes that two distinct classes of property are delineated by being above or below a CPR of 86.5 percent. (*See id.*) Second, Plaintiff argues that the ballot language for Measure 50 failed to adequately inform voters of the consequences of a yes vote. (*See id.* at 17-18.) Specifically, he points to language that "[t]he measure repeals obsolete constitutional provisions[,]" alleging that Measure 50 repealed uniformity clauses in the Oregon Constitution. (*See id.*; Ex 6.) Third, Plaintiff continues to argue that Measure 50 has no rational basis and serves no legitimate government purpose. (*Id.* at 3, 18.) Fourth, Plaintiff argues that MAV should be reset upon sale. (*Id.* at 19.) Finally, Plaintiff continues to argue that the county erred when it determined the subject property's MAV as new property in the 1999-00 and 2000-01 tax years. (*Id.*)

In response to Plaintiff's amended complaint, the department (1) requests dismissal of Plaintiff's RMV claim as moot; (2) requests dismissal of Plaintiff's MAV and AV claims for failure to state a claim upon which relief may be granted; and (3) requests dismissal of Plaintiff's complaint with prejudice. (*See generally* Inv's Mot Dismiss.)

III. ANALYSIS

Broadly, the issue is whether the department's Motion to Dismiss should be granted. "In considering a motion to dismiss for failure to state ultimate facts sufficient to constitute a claim, the court's review is limited to the facts alleged in the complaint, accepting those facts as true." *Work v. Dept. of Rev.*, 22 OTR 396, 397-98 (2017), *aff'd*, 363 Or 745, 429 P3d 375 (2018)

(internal quotation marks omitted).[5] The court begins by addressing Plaintiff's RMV claim, which is resolved. Next, the court considers Plaintiff's theories to reduce the subject property's MAV and AV:

(1) that the county erred when it established the subject property's MAV in 1999-00 and 2000-01;

(2) that the subject property's MAV should be reset upon sale in the 2020-21 tax year;

(3) that some or all of Measure 50 is unconstitutional;

(4) that Measure 50 conflicts with or otherwise violates Article I, section 20, of the Oregon Constitution, which guarantees equal privileges and immunities; and

(5) that Measure 50 repealed uniformity clauses in the Oregon Constitution and failed to adequately inform voters that it did so.

The court does not consider Plaintiff's challenge under the Equal Protection Clause of the 14th Amendment because it previously considered and rejected it.[6] (*See* Or Deny Ptf's Mot Summ J at 6-8.)

A.      *Plaintiff's RMV Claim*

Plaintiff requests that the subject property's 2020-21 RMV be reduced to $495,000 based on his purchase price and the county now agrees to that request. (*See* Or at 2, Jul 25, 2022 (describing RMV as stipulated).) The department asks the court to dismiss Plaintiff's RMV claim as moot. The court disagrees that Plaintiff's RMV claim is moot because the court has not received evidence that the county has corrected the 2020-21 tax roll or issued Plaintiff a refund.

---

[5] The court may rely on "other evidence," including evidence presented through affidavits or declarations, so long as all parties have a reasonable opportunity to present such evidence. Tax Court Rule (TCR) 21 A; *see also* Preface to the Tax Court Rules – Magistrate Division (TCR-MD) ("If circumstances arise that are not covered by a Magistrate Division rule, the rules of the Regular Division may be used as a guide to the extent relevant").

[6] In accordance with the "first things first" doctrine, Oregon courts consider state statutory and state constitutional claims before addressing any federal statutory or federal constitutional claims. *Hughes v. State of Oregon*, 314 Or 1, 12, 838 P2d 1018 (1992). Here, however, Plaintiff presented a claim under the federal constitution and the court ruled on it *before* Plaintiff amended his complaint to add state constitutional claims.

*See, e.g., FedEx Ground Package System, Inc. v. Dept. of Rev.*, 20 OTR 547, 549 (2012); *Numrich v. Dept. of Rev.*, 17 OTR 402, 407-08 (2004) (determining the taxpayer's complaint against the department should be dismissed as moot because the department abated its assessments and discharged all related liens against the taxpayer). Thus, the court continues to treat the subject property's 2020-21 RMV as stipulated and incorporates it into this Decision.

Plaintiff further argues that reduction of the subject property's RMV would only provide temporary relief and that an alternative result is therefore necessary: a reduction in MAV to $365,000. (Ptf's First Am Compl at 8.) Plaintiff's argument relies on speculative assertions about an undeveloped future controversy: "We are now in a bubble market and undoubtedly My RMV will exceed my RMV forthwith." (*Id.*) Such arguments are not well taken and must be rejected by this court. *See Kaady v. Dept. of Rev.*, 15 OTR 124 (2000) (taxpayer not aggrieved by speculation that current RMV could be used to set future MAV if statutes changed).

B.      *Claim of Error in Subject Property's 1999-00 and 2000-01 MAVs*

Plaintiff previously alleged that the subject property's 1999-00 and 2000-01 MAVs reflected errors made by the county and continues to make similar allegations. (*See* Or Deny Ptf's Mot Summ J at 5 (Plaintiff referred to "massive mistake" when MAV was established); *see also* Ptf's First Am Compl at 19 (alleging county "never fulfilled [its] ministerial duty" in assigning MAV in those years).) The county responded that it was not aware of any mistake in those years and, even if a mistake occurred, it is not correctible under ORS 311.205.[7] (*See* Or Deny Ptf's Mot Summ J at 6.)

/ / /

/ / /

_____

[7] The court's references to the Oregon Revised Statutes (ORS) are to 2019.

Plaintiff has cited no authority in support of his request to correct the subject property's 1999-00 and 2000-01 MAVs and the court is aware of none. *See, e.g., Woody Family Properties v. Jackson County Assessor*, TC-MD 200188N, 2021 WL 223245 (Or Tax M Div, Jan 21, 2021) (finding no authority to correct tax years beyond the current tax year and preceding five tax years under ORS 311.205). Accordingly, Plaintiff's claims for those years must be dismissed.

C.      *Claim That MAV Reset Upon Sale*

Plaintiff argues that MAV should be reset upon sale, and his requested 2020-21 MAV and AV for the subject property is based upon that premise. (*See* Ptf's First Am Compl at 19.) The Oregon Constitution lists situations that qualify as exceptions to the general rule that MAV increases by no more than three percent per year. Or Const Art XI, § 11(1)(c).[8] Sale of the property is not an enumerated exception and Plaintiff has not alleged that any exception events listed in the Constitution apply to the subject property's 2020-21 MAV. *See MW 2000 Wilson, LLC v. Multnomah County Assessor,* TC-MD 200234N, 2021 WL 4317367 (Or Tax M Div, Sept 23, 2021) (court declined to create new exception event for property that moved from state to

_____

[8] The exceptions list indicates "property shall be valued at the ratio of average maximum assessed value to average real market value of property located in the area in which the property is located that is within the same property class, if on or after July 1, 1995:

"(A) The property is new property or new improvements to property;

"(B) The property is partitioned or subdivided;

"(C) The property is rezoned and used consistently with the rezoning;

"(D) The property is first taken into account as omitted property;

"(E) The property becomes disqualified from exemption, partial exemption or special assessment; or

"(F) A lot line adjustment is made with respect to the property, except that the total assessed value of all property affected by a lot line adjustment shall not exceed the total maximum assessed value of the affected property under paragraph (a) or (b) of this subsection."

Or Const Art XI, § 11(1)(c).

local appraisal).  Plaintiff's recalculation of the subject property's MAV, which begins with the RMV for the 2020 tax year and applies the base year CPR of 86.5 percent, lacks a cognizable legal basis.  Plaintiff has presented no legal authority supporting his request to recalculate the subject property's 2020-21 MAV, and the court is aware of none.  Thus, this claim is not viable and must be dismissed.

D.      *Plaintiff's Claims Under Oregon Constitution*

      1.      *Scope of relief available: Aggrievement and requests for declaratory relief*

Plaintiff's claims under the Oregon Constitution seek, in part, to overturn Measure 50. (*See, e.g.,* First Am Compl at 16, 19 (describing Measure 50 as "unconstitutional" and asking court "strike the unconstitutional MAV provisions").)  That form of relief is unavailable both because Plaintiff is not aggrieved and because the Magistrate Division cannot give declaratory relief.  Plaintiff is not aggrieved because invalidating Measure 50 would not net him any tax savings for the 2020-21 tax year.  As the court explained in its first order denying Plaintiff's first motion for summary judgment, before Measure 50, property was "assessed at 100 percent of its real market value." *Ellis v. Lorati*, 14 OTR 525, 533 (1999).  Plaintiff has offered no explanation of how the subject property's taxes are *higher* than they would be without Measure 50.  Thus, Plaintiff is not aggrieved in his claims to invalidate Measure 50.  *See Paris v. Dept. of Rev.*, 19 OTR 519, 521-22 (2008) (to be aggrieved, the requested relief must reduce tax liability).

Even if Plaintiff were aggrieved by Measure 50, this division of the court may not provide declaratory relief.  Plaintiff's First Amended Complaint seeks a declaratory judgment that Measure 50 and its implementing statutes are unconstitutional.  (First Am Compl at 18.)  By requesting declaratory relief in the Magistrate Division of the court, Plaintiff overlooked an important differentiation in the court's divisions: the Magistrate Division is not a court of record.

As set out in the Declaratory Judgments Act, ORS 28.010 provides "*Courts of record* within their respective jurisdictions shall have power to declare rights, status, and other legal relations, whether or not further relief is or could be claimed." (Emphasis added.) The "Magistrate Division is not a court of record; proceedings before it are informal and are not subject to the rules of evidence." *Village at Main St. Phase II, LLC v. Dept of Rev*, 356 Or 164, 167, 339 P3d 428 (2014), *citing* ORS 305.430(1) ("Proceedings before the magistrate division shall not be reported"). An action for declaratory relief must be brought in the Regular Division of the court. *Fields v. Dept. of Rev.*, 19 OTR 547, 549 (2009).

The court rejects Plaintiff's requests to overturn Measure 50 but considers his constitutional arguments in the context of his appeal of the subject property's 2020-21 value.

2.     *Claim that Measure 50 conflicts with guarantee of equal privileges and immunities*

Article I, section 20, of the Oregon Constitution provides "[n]o law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens." Plaintiff argues Measure 50 conflicts with that guarantee of equal privileges and immunities because it created "a privileged class," which he defines as properties for which the initial MAV was calculated using a CPR of less than 86.5 percent. (Ptf's First Am Compl at 1, 16-17.) Plaintiff claims the subject property was denied that benefit and proposes a remedy of applying a CPR of 86.5 percent to the subject property.

Measure 50 must be read in harmony with other constitutional provisions and, if it cannot be harmonized, Measure 50 takes precedence over preexisting constitutional provisions, such as Article I, section 20. *See In re Fadeley*, 310 Or 548, 560-61, 802 P2d 31 (1990) (later-enacted provision modifies existing provision). The court considers whether the CPR mechanism of calculating MAV under Measure 50 conflicts with Article I, section 20, as Plaintiff contends.

Generally, to state a claim as a class member under Article I, section 20, a taxpayer must show that:

> "(1) [the taxpayer] is a member of a group that is a 'true class,' (2) [the challenged law] grants another group a privilege or immunity that [the taxpayer's] group has not been granted, (3) the differential treatment is based on characteristics the group has that are apart from the statute, and (4) the differential treatment has no rational basis."

*State v. Goacher*, 303 Or App 783, 788, 466 P3d 1047 (2020). A "true class" is one that is "defined in terms of characteristics that are shared apart from the challenged law or action." *Tanner v. Oregon Health Sciences University*, 157 Or App 502, 521, 971 P2d 435 (1998). "Examples of true classes include gender, ethnic background, legitimacy, past or present residency, and military service." *Id*. "True classes" may be "suspect" or "nonsuspect," resulting in different levels of scrutiny; race and sex are suspect, whereas geographic residence is nonsuspect. *Id.* at 521-523.

In contrast to "true classes," a "nontrue class" is one created by statute, and the classic example is a statutory filing deadline: it creates a class of those who timely file, and a class of those who do not. *Tanner*, 157 Or App at 521; *see also State v. Clark*, 291 Or 231, 240, 630 P2d 810 (1981) ("every law itself can be said to 'classify' what it covers from what it excludes"). When a law itself establishes a class – that is, a "nontrue class" – the privileges and immunities clause does not apply. *See MacPherson v. Dept. of Admin. Serv.*, 340 Or 117, 129-30, 130 P3d 308 (2006) ("the protection that Article I, section 20, affords is available to only those individuals or groups whom the law classifies according to characteristics that exist apart from the enactment that they challenge"). Two cases on nontrue classes are instructive.

/ / /

/ / /

In *MacPherson*, the court rejected a challenge to Measure 37 under Article I, section 20, of the Oregon Constitution. Measure 37 treats landowners differently depending on whether they acquired land before or after the relevant land use regulation was enacted, with compensation allowed to the landowners who predated the land use regulation. 340 Or at 129. The court found no violation of equal privileges and immunities because the distinction was not based on a "true class" – rather, the distinction was created by the ballot measure. *Id.* at 129-130. Similarly, the court in *Wilson v. Department of Revenue*, 302 Or 128, 131, 727 P2d 614 (1986), rejected the taxpayer's argument that a statute violated Article I, section 20, where, in a like-kind exchange, it allowed deferral of gain on property acquired in Oregon but not on property acquired out of state.

Plaintiff describes his alleged class as "that large class of Oregon property owners who have been denied equal MAVs, AVs and hence taxes equal to and on the same terms of taxpayers who [enjoy lower MAVs and AVs from Measure 50]." (Ptf's First Am Compl at 4.) Plaintiff's proffered class is not separate and distinct from classifications created by Measure 50. The CPR was created by Measure 50 and reflects the fluctuating relationship between RMV and MAV in a particular location and year. The CPR does not reflect any preexisting or inherent quality of a taxpayer or property and is not defined by any characteristics that exist apart from Measure 50. As a result, the class of taxpayers impacted by the CPR is not a true class that could give rise to a constitutional protection under Article I, section 20. As in *MacPherson* and *Wilson*, Measure 50 at most created nontrue classes. Because Plaintiff has not identified any true class entitled to protection under Article I, section 20, Plaintiff's claim must be dismissed.

/ / /

/ / /

3.    *Claim that Measure 50 invalidly repealed uniformity clauses*

Plaintiff argues that the ballot language for Measure 50 failed to adequately inform voters of the consequences of a yes vote.  Specifically, he points to language that "[t]he measure repeals obsolete constitutional provisions[,]" alleging that Measure 50 repealed uniformity clauses in the Oregon Constitution.  (*See* First Am Compl at 17-18; Ex 6.)

The premise of Plaintiff's argument is incorrect: Measure 50 did not *repeal* the uniformity clauses in the Oregon Constitution, but rather exempted itself from their application. *See* Or Const Art XI, § 11(18) (stating that "Section 32, Article I, and section 1, Article IX of this Constitution, shall not apply to this section").  As the department observed, the uniformity provisions "remain in effect outside the ambit of Measure 50," which would not be true if they had been repealed.  (Inv's Mot Dismiss at 13.)  This court previously explained the practical result of Measure 50's exemption from the uniformity clauses:

> "in one sense MAV is somewhat artificial or arbitrary.  That is inherent in the overall scheme of section 11.  The concept may, over time, result in various degrees of nonuniformity in the property tax system.  Section 11(18) contemplates this and excuses itself from complying with other constitutional provisions requiring uniformity, specifically Article IX, section 1[,] and Article I, section 32."

*Ellis*, 14 OTR at 535.

Plaintiff's disagreement with the degrees of nonuniformity that Measure 50 allows and whether the ballot language adequately informed voters of this possibility has the hallmarks of a ballot title challenge.  *See* ORS 250.005 to 250.149.[9]  Plaintiff has not identified any authority to bring his ballot title challenge in this court.  *See, e.g., Adams v. Kulongoski*, 322 Or 122, 902 P2d 1191 (1995) (describing necessary steps to challenge ballot title and considering challenge to

---

[9] Those statutes describe the requirements for ballot titles and provide various avenues for the public to comment on and challenge ballot titles, including to the Secretary of State and Oregon Supreme Court.

ballot title proposing to add property tax limitation to constitution); *see also League of Oregon Cities v. State*, 334 Or 645, 652-53, 56 P3d 892 (2002) (explaining that ORS 250.044(1) permits ballot measure challenge on constitutional grounds to be brought in circuit court during six-month period after electors have adopted the challenged measure). Plaintiff's claim is not properly before this court and must be dismissed.

E.      *Second Motion For Leave to Amend*

During the briefing period while the department's Motion to Dismiss was pending, Plaintiff filed a second motion for leave to amend seeking to add new claims on the basis that "Plaintiff has discovered new facts and law that apply to the case." (Mot to File Sec Am Compl at 1.) Plaintiff's motion clarified that the proposed second amended complaint "is based on the same facts as the First Amended Complaint, plus other contemporary facts and legal theories learned since that filing." (*Id.* at 3.) Plaintiff explained that he was unable to include the new facts and legal theories in his earlier complaints because "[t]his is the first and only case challenging Measure 50 on all constitutional grounds, so I don't apologize for my learning curve." (*Id.*) Plaintiff's second amended complaint proposes to add two new claims that Measure 50 is invalid due to noncompliance with constitutional requirements bearing on its adoption: (1) a claim under Article IV, section 22, of the Oregon Constitution; and (2) a claim under Article XVII, section 1, of the Oregon Constitution.

The court reviews a motion to amend a pleading using the standard found in TCR 23 A, which provides that a party may request leave of the court to amend its pleadings, "and leave will be freely given when justice so requires." TCR 23 is substantially similar to Oregon Rule of Civil Procedure (ORCP) 23; therefore, the court looks to authority interpreting ORCP 23.[10] The

---

[10] *See* Preface to TCRs ("To the extent that the wording of a TCR is the same as that of an ORCP, cases

principal consideration in whether to deny leave to file an amended pleading is whether the opposing party will be prejudiced by the amendment. *Reeves v. Reeves*, 203 Or App 80, 84-85, 125 P3d 755 (2005) (concerning complaints). Although "the gravamen of the inquiry under ORCP 23 A is prejudice to the opposing party," the court may also exam the legal merit of the proposed amendment "insofar as ORCP 23 A permits leave to be denied for futile amendments." *Eklof v. Persson*, 369 Or 531, 533, 508 P3d 468 (2022). An amendment is futile if the claim as amended "could not prevail on the merits due to some failing in the pleadings or some unavoidable bar or obstacle." *Id.* at 543-44.

The department says "[a] new filing would prejudice [it] in terms of time, money, and effort[,]" noting that it already "spent considerable resources to research and draft the motion to dismiss[.]" (Inv's Resp at 3.) The department characterizes Plaintiff's proposed second amended complaint as presenting "substantially similar new claims" though the claims are presented in "pages of superfluous legal argument unsupported by allegations of ultimate fact[.]" (*Id.* at 3-4.) Additional expenditure of the department's resources, while frustrating, is not meaningful prejudice sufficient to deny a motion seeking to amend a complaint. *See Eklof*, 369 Or at 533, 536 (concluding no meaningful prejudice to the state where allowing the amendment would "add to the burden of having to prove this case all over again" and make the state meet the claims). Instead, it is the department's assertion of the futility of Plaintiff's second amended complaint that merits further discussion.

The court finds Plaintiff's second amended complaint to be futile for several reasons. First, as explained above, in seeking to overturn Measure 50 and related statutes, Plaintiff is not aggrieved as required by ORS 305.275(1)(a). Second, as explained above, to the extent Plaintiff

interpreting the ORCP may be looked to as authority for interpreting the TCR.").

seeks declaratory relief, that relief is not available in the Magistrate Division. Third, Plaintiff's

"new" claims, besides containing restatements of his former claims, fail to state any claims upon

which relief may be granted. Finally, Plaintiff has identified no new evidence. Having already

explained why Plaintiff is not aggrieved and why declaratory relief is unavailable, the court turns

briefly to Plaintiff's failure to state any claims and failure to identify new evidence.

> 1. *Failure to state a claim*

Plaintiff asserts his first new claim as follows:

> "[Measure 50] was created through House Joint Resolution 85 (1997). It set forth
> Article XI, section 11[,] in full. It violated Article IV, section 22[,] of the Oregon
> Constitution by providing '(18) Sec. 32, Art. I and sec. 1 Art IX of the
> constitution shall not apply to this section[.'] The law required that the legislature
> set out the amended section in full length and it did not do so."

(Ptf's Sec Am Compl at 19.) Plaintiff misreads Article IV, section 22. That provision specifies,

in pertinent part, that "[n]o *act* shall ever be revised, or amended by mere reference to its title,

but the *act* revised, or section amended shall be set forth, and published at full length." Or

Const, Art IV, § 22 (emphasis added). House Joint Resolution 85 was not an instance of the

legislature's normal process of revising or amending an *act* that becomes an Oregon law. House

Joint Resolution 85 amended the state's constitution. The Oregon Supreme Court acknowledged

the difference in those activities when it observed that Article IV, section 22, "obviously refers to

the acts of the legislature in enacting laws and has no reference to an amendment to the

constitution." *State v. Payne*, 195 Or 624, 635, 244 P2d 1025 (1952). Plaintiff's claim under

Article IV, section 22, is meritless and does not warrant amendment of his complaint.

Plaintiff's second new claim states "[Measure 50] is void because it violated the 'separate

vote requirement' of Article XVII, section 1, et seq. of the Oregon Constitution." (Ptf's Sec Am

Compl at 19.) Plaintiff asserts that the "second subject of [Measure 50] dealt with the creation of

a 'new properties' class."[11]  He goes on to explain:

> "Assuming voters understood that 'old property' owners were to obtain a tax break as members of the 'old property' class, but that they were excluded from the tax benefits of the 'new property' class and that created an impermissible conflict because voters were compromised between accepting the tax reduction as an old property, but concerned about higher taxes because they were not included the 'new property' class; therefore the vote required a separate constitutional amendment with its own Ballot Description, ballot pamphlet [with] the precise statutory language, identifying the nature of the inequality, the justification for the inequality and the revenue loss from the favorable tax treatment."

(*Id.*)  Plaintiff obliquely cites "the Rule" of *Armatta v. Kitzhaber*, 327 Or 250, 959 P2d 49 (1998) to conclude Measure 50 is void without offering any analysis for his conclusory statement.  (*Id*.)

*Armatta* indeed set out the test for the separate vote requirement as whether a measure, if adopted, "would make two or more changes to the constitution that are substantive and that are not closely related." *Armatta*, 327 Or at 277.[12]  Plaintiff skips the text of the initiative, the changes it made to the constitution, and their degree of relatedness, and instead vaguely observes that "[t]he two subjects [old property and new property] were related nominally, but old property owners were excluded from the new property class." (Ptf's Sec Am Compl at 19.)  Plaintiff's discussion of classes in this context is irrelevant.  Plaintiff has not stated a claim regarding the separate vote requirement of Article XVII, section 1, nor does a plausible amendment appear to exist to cure the futility of this misguided claim.

---

[11] Plaintiff also argues "the Changed Property Ratio (CPR) did not provide a clue that the 'new property' class would receive materially permanent MAV ratios lower than owners of the old class and thus lower tax bills, * * * it unconstitutionally * * * excluded members of the 'old property' class from the same privilege." (Ptf's Sec Am Compl at 19.)  The court notes that nothing about Article XVII, section 1, pertains to classes or privileges.

[12] A subsequent opinion by the Oregon Supreme Court left uncertain the proper analysis for substantive changes being closely related.  *See Lincoln Interagency Narcotics Team v. Kitzhaber*, 341 Or 496, 145 P3d 151 (2006) (a majority concluded that two parts of a ballot measure were closely related sufficient to avoid separate votes, but only a plurality agreed on the appropriate reasoning for what constitutes two amendments being closely related).  Nevertheless, the basic test for the Article XVII, section 1, separate-vote requirement remains good law. *State v. Rogers*, 352 Or 510, 514-15, 288 P3d 544 (2012) (reiterating *Armatta* "is the seminal case on the separate-vote requirement" and confirming the test remains whether, if adopted, the proposal would make two or more changes to the constitution that are substantive and that are not closely related).

2.	*No new evidence*

It has been nearly three decades since the voters adopted Measure 50.  Plaintiff does not allege that any of his asserted new facts and legal theories about the circumstances surrounding Measure 50's adoption were unknown until this late date.  The court concludes that justice is not served by now allowing Plaintiff to offer new claims based upon historical records that have been publicly available since long before he filed his first complaint.  *See Edwards v. Lewis*, 76 Or App 94, 96-97, 707 P2d 1298 (1985) (trial court properly denied motion to amend where "plaintiffs were well aware of the allegedly new evidence very early on in the proceedings").

3.	*Conclusion on second motion to amend complaint*

Upon review, the court agrees with the department that Plaintiff's proposed second amended complaint is futile and denies Plaintiff's second motion to amend.

## IV.  CONCLUSION

Upon careful consideration, the court adopts the parties' stipulated 2020-21 RMV of $495,000 for the subject property.  The court concludes that the department's Motion to Dismiss must be granted with respect to Plaintiff's claims for declaratory relief and his claims to reduce the subject property 2020-21 MAV and AV.  Now, therefore,

IT IS THE DECISION OF THIS COURT that, as Defendant agreed, the tax year 2020-21 RMV for the property identified as Account 10890676 was $495,000.

IT IS FURTHER DECIDED that Defendant-Intervenor's Motion to Dismiss is granted with respect to Plaintiff's MAV and AV claims, and request for declaratory relief.

/ / /

/ / /

/ / /

IT IS FURTHER DECIDED that Plaintiff's second motion to amend his complaint is denied.

Dated this _____ day of July 2024.

_____

*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of this Decision or this Decision cannot be changed.  TCR-MD 19 B.*

*This document was signed by Presiding Magistrate Allison R. Boomer and entered on July 24, 2024.*